UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BENCHMARK INVESTMENTS, INC., | ) |
| | ) |
| Plaintiff, | ) Case No. 20-cv-10888 |
| | ) |
| v. | ) |
| | ) **COMPLAINT** |
| PAVMED INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

Plaintiff Benchmark Investments, Inc., by and through its undersigned counsel, Sullivan & Worcester LLP, files this complaint against Defendant PAVmed Inc., and alleges as follows:

## NATURE OF THE ACTION

1.      This lawsuit arises from Defendant PAVmed Inc.'s ("PAVmed" or the "Company") egregious disregard of its explicit contractual obligations to Kingswood Capital Markets ("Kingswood"), a division of Plaintiff Benchmark Investments, Inc. ("Benchmark").

2.      Kingswood and PAVmed entered into, and duly executed, a letter agreement on November 17, 2020 (the "Engagement Agreement") for a proposed firm commitment underwritten follow-on public offering by PAVmed (the "Offering") of its common stock. Under Section 1 of the Engagement Agreement, PAVmed unequivocally granted Kingswood the exclusive right to act as PAVmed's lead underwriter, deal manager, and sole book running manager, beginning on November 17, 2020 and ending on the earlier of 30 days from November 17th or the final closing date, if sooner (the "Engagement Period"), of the Offering (hereinafter referred to as the "Exclusive Rights Provision").  Section 1 of the Engagement Agreement

{S2701481; 1}

further states that during the "Engagement Period," PAVmed "agrees not to solicit, negotiate

with, or enter into any agreement with any other . . . placement agent."

3.      As of December 11, 2020, and as of the date of this filing, PAVmed and

Kingswood had not conducted or completed the Offering.  Thus, on December 11, 2020,

PAVmed and Kingswood were still well within the 30-day Engagement Period set forth in the

Exclusive Rights Provision.

4.      The Engagement Agreement explicitly provides that PAVmed's negotiation,

coordination, and consummation of any offering during the Engagement Period should have

been solely with Kingswood.  PAVmed's actions to negotiate and consummate a financing away

from Kingswood during the Engagement Period directly breached the Engagement Agreement.

5.      PAVmed did not notify, inform, or disclose the Placement Agreement to

Kingswood at any point in time prior to the filing. Nor did PAVmed seek to terminate its

agreement with Kingswood on or before December 11, 2020, in accordance with the

Engagement Agreement.

6.      Indeed, pursuant to the Engagement Agreement, specifically Section 7 thereto

(hereinafter the "Termination Provision"), PAVmed could not terminate the Engagement

Agreement prior to the completion of the Engagement Period other than for "Cause." Cause, "for

the purpose of this Agreement, shall mean willful misconduct, gross negligence or a material

breach of the Agreement by Kingswood."  Even if PAVmed believed that Kingswood had

engaged in conduct constituting cause, it "must first notify Kingswood in writing of the facts and

circumstances supporting such an assertion(s), and allow Kingswood ten (10) days to cure such

alleged conduct."  No notice whatsoever was provided by PAVmed to Kingswood pursuant to

Section 7, nor did Kingswood have an opportunity to cure any alleged defect.

7.      In fact, PAVmed memorialized its breach of the Engagement Agreement with Kingswood on December 11, 2020, when it filed its Form 8-K with the Securities and Exchange Commission ("SEC") and disclosed that it had entered into a placement agency agreement (the "Placement Agreement") with entities who were not Kingswood for an offering of 5,585,000 shares of PAVmed's common stock.  A copy of the December 11, 2020 8-K is annexed hereto as Exhibit A.

8.      On December 18, 2020, PAVmed filed a second Form 8-K with the SEC disclosing the consummation of a second financing for an additional $8.1 million common stock. A copy of the December 18, 2020 8-K is annexed hereto as Exhibit B.  Again, PAVmed completed this offering away from Kingswood.  Upon information and belief, and for all material intents and purposes, the activities leading up to the second offering (such as negotiating and soliciting with other sources of financing) occurred within the Engagement Period and during the time which PAVmed contractually agreed to work solely with Kingswood.

9.      As reflected in the second Form 8-K, and reported publicly on December 18, 2020, PAVmed disclosed that it entered into agreements for the sale of 5.1 million shares of common stock in a registered direct offering at a price of $1.60 per share for gross proceeds of approximately $8.1 million.

10.      In the alternative, to the extent the second offering on December 18, 2020 is deemed outside the Engagement Period, PAVmed breached a separate provision of the Engagement Agreement.  Pursuant to the Termination Provision, and upon its expiration, "if the Company subsequently completes any public or private equity financing, in either case with any investors actually introduced to the Company by Kingswood, during the Engagement Period after approval in advance by the Company . . . , at any time during the nine (9) months after such

termination, then Kingswood shall be entitled to receive the compensation as set forth in Section

3(a) of this Agreement with respect to such financing to the extent of such investors'

participation and then only to the extent of the Company's knowledge of such investors'

participation."

11.     PAVmed knowingly and intentionally breached its contractual obligations to

Kingswood causing Kingswood damages when it consummated two offerings in direct violation

of the Engagement Agreement.  Indeed, PAVmed's filing of two separate Form 8-K's on

December 11 and December 18, 2020, respectively, confirmed and memorialized PAVmed's

breach.

<strong><u>THE PARTIES, JURISDICTION AND VENUE</u></strong>

12.     Plaintiff Benchmark Investments, Inc. is a corporation organized under the laws

of Arkansas and has its principal place of business at 175 Country Club Drive, Building 400,

Suite D, Stockbridge, GA 30281.

13.     Defendant PAVmed Inc. ("PAVmed") is a corporation organized under the laws

of Delaware with its principal place of business at One Grand Central Place, Suite 4600, New

York, New York 10165.

14.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§1332(a).

15.      The amount in controversy exceeds the sum or value of $75,000, exclusive of

interest and costs.

16.     This Court has personal jurisdiction and venue over Defendant because it resides

and regularly conducts business in this District.  Moreover, Defendant consented to a forum

selection clause which included this District and waived any objection to the venue of any such suit in this District.

<h2 style="text-align:center">FACTS COMMON TO ALL CLAIMS</h2>

17.     Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

18.     On December 11, 2020, PAVmed filed a Form 8-K with the SEC which provided the required notification that it had entered into a material agreement outside the ordinary course of its business.

19.     As reflected in the Form 8-K, and reported publicly on December 11, 2020, PAVmed disclosed that it had entered into agreements for the sale of 5.6 million shares of common stock in a registered direct offering at a price of $1.60 per share for gross proceeds of approximately $8.9 million. PAVmed further disclosed that the compensation to be paid as an underwriting fee for the offering was 7% of the aggregate gross proceeds, a fee nearly identical to Kingswood's fee.

20.     At no point in time, however, did PAVmed initiate discussions with Kingswood to terminate the Engagement Agreement. As a result, Kingswood spent time, resources, and money pursuant to its exclusive right to act as PAVmed's lead underwriter, deal manager, and sole book running manager. In fact, Kingswood made two good faith attempts to launch the transaction on two separate occasions during the Engagement Period only to have PAVmed call off the deals at the last minute with little notice or reasoning.

21.     In breach of the Engagement Agreement, and notwithstanding Kingswood's rights under the Exclusive Rights Provision, PAVmed entered into, facilitated, and completed an

offering of its common stock pursuant with entities other than Kingswood.  This is a direct breach of the Exclusive Rights Provision of the Engagement Agreement.

22.     Unbeknownst to Kingswood, and during the time in which PAVmed was expected to be working solely with Kingswood, PAVmed was working with entities other than Kingswood on pricing a second offering and taking all material steps to formalize and effectuate it within the Engagement Period.

23.     On December 18, 2020, PAVmed filed a second Form 8-K with the SEC disclosing the pricing of an additional $8.1 million common stock registered direct offering, as well as a Placement Agreement with entities who are not Kingswood.  Upon information and belief, and for all material intents and purposes, the activities leading up to the second offering occurred within the Engagement Period.

24.     As reflected in the second Form 8-K, and reported publicly on December 18, 2020, PAVmed disclosed that it entered into agreements for the sale of 5.1 million shares of common stock in a registered direct offering at a price of $1.60 per share for gross proceeds of approximately $8.1 million. PAVmed further disclosed that the underwriting fee for the offering was 7% of the aggregate gross proceeds, a fee nearly identical to Kingswood's fee.

25.     Upon information and belief, the second offering would have necessitated preparation, coordination, and confirmation by PAVmed within the Engagement Period, resulting in a second breach of the Exclusive Rights Provision of the Engagement Agreement as a closing on December 18, 2020, would have required solicitation, negotiation, and entry into a separate agreement prior to December 18, 2020, and within the Engagement Period.

26.     In the alternative, to the extent the second offering on December 18, 2020 is deemed outside the Engagement Period, PAVmed breached a separate provision of the

{S2701481; 1}                                    6

Engagement Agreement.  Pursuant to the Termination Provision, and upon expiration of the

Engagement Agreement, "if the Company subsequently completes any public or private equity

financing, in either case with any investors actually introduced to the Company by Kingswood,

during the Engagement Period after approval in advance by the Company . . . , at any time during

the nine (9) months after such termination, then Kingswood shall be entitled to receive the

compensation as set forth in Section 3(a) of this Agreement with respect to such financing to the

extent of such investors' participation and then only to the extent of the Company's knowledge

of such investors' participation."

27.     In the alternative, if the second offering on December 18, 2020 is deemed outside

of the Engagement Period, the offering is a direct breach of the Termination Provision of the

Engagement Agreement because PAVmed failed to pay compensation due Kingswood pursuant

to Section 7 of the Engagement Agreement.

28.     PAVmed's breaches have caused Kingswood monetary damages exceeding the

jurisdictional amount.

## COUNT I
## BREACH OF CONTRACT
### (The Engagement Agreement – Exclusive Rights Provision)

29.     Plaintiff repeats and realleges each and every allegation set forth above as if set

forth fully herein.

30.     The Engagement Agreement is a valid and enforceable contract between PAVmed

and Kingswood, a division of Plaintiff Benchmark.

31.     The Exclusive Rights Provision is a valid and enforceable provision of the

Engagement Agreement, and December 11, 2020 is within the 30-day Engagement Period.

32.     Upon information and belief, any offering by PAVmed, which was disclosed on December 18, 2020, required solicitation, negotiation, preparation, coordination, and confirmation of an agreement within the Engagement Period.  Indeed, the second offering disclosed on December 18, 2020, is covered under the Engagement Period by virtue that PAVmed would have had to have had discussions with investors and other counterparties and entities during the Engagement Period in direct violation of Kingswood's contractual rights.

33.     PAVmed did not honor its contractual obligation to have Kingswood act as the Company's exclusive lead underwriter, deal manager, and sole book running manager for offerings within the Engagement Period, as stated in Section 1 of the Engagement Agreement.

34.     PAVmed further breached Section 1 of the Engagement Agreement by soliciting, negotiating with, or entering into any agreement with other entities who were not Kingswood.

35.     As a direct and proximate result of PAVmed's breach, Kingswood (i) was not named as the Company's exclusive lead underwriter, deal manager, and sole book running manager for the December 11, 2020 Offering; (ii) was denied approximately $675,500 or an amount to be proven at trial; (iii) was not named as the Company's exclusive lead underwriter, deal manager, and sole book running manager for the December 18, 2020 Offering; (iv) was denied approximately $617,200 or an amount to be proven at trial; and (v) incurred additional damages including legal fees and costs, as well as other monetary and non-monetary damages to be proven at trial.

36.     Kingswood has suffered damages exceeding the jurisdictional amount that are the direct and proximate cause of PAVmed's breach.

## COUNT II
## BREACH OF CONTRACT
### (The Engagement Agreement – Termination Provision)

37.     Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

38.     The Engagement Agreement is a valid and enforceable contract between PAVmed and Kingswood, a division of Plaintiff Benchmark.

39.     The Termination Provision is a valid and enforceable provision of the Engagement Agreement.  To the extent it is determined that December 18, 2020 is one day outside the expiration of the 30-day Engagement Period, and is not covered under the Engagement Period by virtue of the actions that PAVmed would have taken during the Engagement Period in direct violation of Kingswood's contractual rights as alleged in Count I, PAVmed breached the Engagement Agreement's Termination Provision.

40.     Upon information and belief, PAVmed's second offering on December 18, 2020 predominantly involved existing institutional investors, and PAVmed did not honor its contractual obligation to pay Kingswood compensation as set forth in Section 3(a) of the Engagement Agreement with respect to such financing to the extent of such investors' participation, as provided in Section 7 of the Engagement Agreement.

41.     As a direct and proximate result of PAVmed's breach, Kingswood (i) was not paid compensation pursuant to Sections 3(a) and 7 of the Engagement Agreement; (ii) was denied approximately $617,200 or an amount to be proven at trial; and (iii) incurred additional damages including  legal fees and costs, as well as other monetary and non-monetary damages to be proven at trial.

42. Kingswood has suffered damages exceeding the jurisdictional amount that are the direct and proximate cause of PAVmed's breach.

**COUNT III**
**DECLARATORY RELIEF**
**(Declaratory Judgment Act, 28 U.S.C. §2201, et. seq)**

43. Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

44. The Court should enter an Order declaring that the Engagement Agreement is a valid and enforceable contract.

45. The Court should enter an Order declaring that the Exclusive Rights Provision is a valid and enforceable provision of the Engagement Agreement.

46. The Court should enter an Order declaring that PAVmed breached the Engagement Agreement when (i) it did not name Kingswood as the Company's exclusive lead underwriter, deal manager, and sole book running manager for the December 11, 2020 Offering; (ii) and solicited, negotiated with, or entered into any agreement with other entities who were not Kingswood; (iii) it did not name Kingswood as the Company's exclusive lead underwriter, deal manager, and sole book running manager for the December 18, 2020 Offering; and (iv) solicited, negotiated with, or entered into any agreement with other entities who were not Kingswood.

47. The Court should enter an Order declaring that, as a direct and proximate result of PAVmed's breach, Kingswood (i) was denied approximately $675,500 or an amount to be proven at trial for the December 11, 2020 Offering; (ii) was denied approximately $617,200 or an amount to be proven at trial for the December 18, 2020 Offering by virtue of the actions that PAVmed would have taken during the Engagement Period in direct violation of Kingswood's

contractual rights as alleged in Count I; and (iii) incurred additional damages including legal fees and costs, as well as other monetary and non-monetary damages to be proven at trial.

48.     In the alternative, the Court should enter an Order declaring that the Termination Provision is a valid and enforceable provision of the Engagement agreement, if it is deemed that December 18, 2020 is one day outside the expiration of the Engagement Period and is not covered under the Engagement Period by virtue of the actions that PAVmed would have taken during the Engagement Period in direct violation of Kingswood's contractual rights.

49.     In the alternative, the Court should enter an Order declaring that PAVmed did not honor its contractual obligation to pay Kingswood compensation as set forth in Section 3(a) of the Engagement Agreement with respect to such financing to the extent of such investors' participation, as provided in Section 7 of the Engagement Agreement.

50.     In the alternative, the Court should enter an Order declaring that, as a direct and proximate result of PAVmed's breach, Kingswood (i) was not paid compensation pursuant to Sections 3(a) and 7 of the Engagement Agreement; (ii) was denied approximately $617,200 or an amount to be proven at trial; and (iii) incurred additional damages including legal fees and costs, as well as other monetary and non-monetary damages to be proven at trial.

51.     The Court should enter an Order declaring that PAVmed is liable for damages to Kingswood in an amount to be proven at trial as result of its breach of the Engagement Agreement.

## PRAYER FOR RELIEF

**WHEREFORE**, Benchmark respectfully requests that this Honorable Court enter judgment in its favor and against PAVmed as follows:

(i)        On Count I, awarding Plaintiff damages in an amount to be determined at trial,

but not less than $1,292,700, plus punitive damages, interest, costs, and attorneys'

fees to the extent allowable by law;

(ii)       On Count II, in the alternative, awarding Plaintiff damages in an amount to be

determined at trial, but not less than $617,200, plus punitive damages, interest,

costs, and attorneys' fees to the extent allowable by law;

(iii)      On Count III, awarding Plaintiff damages in an amount to be determined at trial,

but not less than $1,292,700, plus punitive damages, interest, costs, and attorneys'

fees to the extent allowable by law; and

(iv)      For such other and further relief as the Court deems just and proper.


Dated: New York, New York                   SULLIVAN & WORCESTER LLP
       December 23, 2020


                                            By: /s/ David E. Danovitch_____
                                            David E. Danovitch
                                            1633 Broadway
                                            New York, NY 10019
                                            Phone: (212) 660-3060
                                            ddanovitch@sullivanlaw.com

                                            Michael T. Dyson (*pro hac vice forthcoming*)
                                            SULLIVAN & WORCESTER LLP
                                            1666 K Street, NW
                                            Washington, DC 20006
                                            Phone: (202) 775-1217
                                            mdyson@sullivanlaw.com

                                            Caroline J. Lambert (*pro hac vice forthcoming*)
                                            SULLIVAN & WORCESTER LLP
                                            One Post Office Square
                                            Boston, MA 02109
                                            Phone: (617) 338-2453
                                            clambert@sullivanlaw.com

                                            *Attorneys for Plaintiff Benchmark Investments, Inc.*