UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
                                   :

BENCHMARK INVESTMENTS, INC.,     :
                                   :

                     Plaintiff,   :

                                 :        20-CV-10888 (VSB)

            - against -        :

                                 :        **OPINION & ORDER**

PAVMED INC.,                   :

                                 :

                   Defendants.  :

                                 :
----------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __12/16/21__

<u>Appearances</u>:

Ryan James Whalen
Kari Parks
Gusrae Kaplan Nusbaum PLLC
New York, New York
*Counsel for Plaintiff*

Dielai Yang
John Nicholas Orsini
Friedman Kaplan Seiler & Adelman LLP
New York, New York
*Counsel for Defendant*

<u>VERNON S. BRODERICK</u>, United States District Judge:

       Plaintiff Benchmark Investments, Inc. ("Benchmark") filed this action, arising from a

contract dispute, against Defendant PAVmed, Inc. ("Pavmed") asserting diversity of citizenship

jurisdiction pursuant to 28 U.S.C. § 1332.  Before me is Pavmed's motion to dismiss on the

ground that I lack subject matter jurisdiction, because both Benchmark and Pavmed are citizens

of New York for diversity purposes.  Because I find that there is not complete diversity,

Pavmed's motion to dismiss is GRANTED.

## I.     Background and Procedural History[1]

On December 23, 2020, Benchmark filed its Complaint in this action.  (Doc. 1

("Compl.").)  Benchmark alleges that it and one of its "divisions" entered into a letter agreement

related to a "proposed firm commitment underwritten follow-on public offering by PAVmed."

(*See id.* ¶¶ 1–2.)  Benchmark is a corporation organized under Arkansas law with a stated

principal place of business in Georgia, (*id.* ¶ 12), while Pavmed is a corporation organized under

Delaware law with a principal place of business in New York, (*id.* ¶ 13).

On February 12, 2021, Pavmed moved to dismiss the action on the grounds that I lack

subject matter jurisdiction; Pavmed argues that, under applicable law, Benchmark's principal

place of business is in fact New York.  (*See* Docs. 14–16.)  On March 5, 2021, Benchmark filed

papers in opposition to the Pavmed's motion.  (Docs. 19–21.)  On March 24, 2021, Pavmed filed

its reply papers on the motion.  (Docs. 28–29.)

## II.     Legal Standard

"Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a

claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the

district court lacks the statutory or constitutional power to adjudicate it."  *Morrison v. Nat'l*

*Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted), *aff'd*, 561 U.S. 247

(2010); *United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (describing subject matter

jurisdiction as the "threshold question") (internal quotation marks omitted).  While a district

court resolving a motion to dismiss under Rule 12(b)(1) "must take all uncontroverted facts in

---

[1] This factual background is derived from the allegations in Plaintiff's complaint.  My references to these allegations
should not be construed as a finding as to their veracity, and I make no such findings in this Opinion & Order.  In
addition, in deciding whether there is subject matter jurisdiction, I rely on the affidavits and exhibits submitted by
the parties in connection with Defendant's motion to dismiss.  *See Cortlandt St. Recovery Corp. v. Hellas*
*Telecomm., S.A.R.L.*, 790 F.3d 411, 417 (2d Cir. 2015) (when deciding a motion under Rule 12(b)(1), a court may
rely on evidence outside the pleadings).

the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting

jurisdiction," "where jurisdictional facts are placed in dispute, the court has the power and

obligation to decide issues of fact by reference to evidence outside the pleadings, such as

affidavits," in which case "the party asserting subject matter jurisdiction has the burden of

proving by a preponderance of the evidence that it exists."  *Tandon v. Captain's Cove Marina of*

*Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (internal quotation marks and citations

omitted); *Ernst v. Gateway Plaza Mgmt. Corp.*, No. 11 Civ. 1169(PAC)(RLE), 2012 WL

1438347, at *2 (S.D.N.Y. Mar. 14, 2012) ("In deciding jurisdictional issues, the court may rely

on affidavits and other evidence outside the pleadings.").

## III.    <u>Discussion</u>

In its motion to dismiss, Pavmed argues that Benchmark's principal place of business is

not Georgia, where its headquarters are located, but New York, which defeats diversity of

citizenship since Pavmed itself has its principal place of business in New York.  I agree with

Pavmed.

### A.  *Applicable Law*

The diversity of citizenship statute grants a federal court jurisdiction over suits where

plaintiffs and defendants are "citizens of different States" and "the matter in controversy exceeds

the sum or value of $75,000, exclusive of interest and costs."  28 U.S.C. § 1332(a)(1); *see*

*also Hallingby v. Hallingby*, 574 F.3d 51, 56 (2d Cir. 2009) (discussing 28 U.S.C. § 1332(a)(1)).

There must be "'complete diversity,' i.e. all plaintiffs must be citizens of states diverse from

those of all defendants."  *Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111,

117–18 (2d Cir. 2014) (citing *Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 553

(2005)).

For the purposes of diversity of citizenship jurisdiction, "a corporation shall be deemed to be a citizen of every State" where it is "incorporated" as well as "where it has its principal place of business." 28 U.S.C. § 1332(c)(1). A corporation's principal place of business is its "nerve center." *Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010). "In practice, this 'should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination . . . ." *OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 218 (2d Cir. 2016) (quoting *Hertz*, 559 U.S. at 93 (nerve center is "not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion).")).

The nerve center test can be "hard" to apply in cases involving "telecommuting," i.e., those where "corporations may divide their command and coordinating functions among officers who work at several different locations . . . ." *Hertz*, 559 U.S. at 95–96. However, the Supreme Court expected that this test would still find a corporation's principal place of business to be the site of a corporation's functional "center of overall direction, control, and coordination," and not simply the site that a corporation formally declares to be its "principal executive offices," or merely "a mail drop box, a bare office with a computer, or the location of an annual executive retreat." *See id.* at 96–97. Thus, "the test focuses on where a corporation's 'high-level' decisions are made, not where day-to-day activities are managed." *St. Paul Fire & Marine Ins. Co. v. Scopia Windmill Fund, LP*, 87 F. Supp. 3d 603, 605 (S.D.N.Y. 2015); *see also 3123 SMB LLC v. Horn*, 880 F.3d 461, 466 (9th Cir. 2018) ("[N]umerous post-*Hertz* district court cases . . . have determined [that] the principal place of business of a holding company by looking to the location in which its officers or directors meet to make high-level management decisions." (citation omitted)).

Accordingly, courts have found irrelevant the situs of things like "strategic meetings," "tax filings," and "corporate records," since what matters is the situs from where the corporation's high-level officers and directors "overs[ee] and control[]" corporate activities.  *See CostCommand, LLC v. WH Administrators, Inc.*, 820 F.3d 19, 25 (D.C. Cir. 2016); *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 171 (4th Cir. 2014) (looking to location of the "critical mass of controlling corporate officers"); *Bartlett v. Honeywell Int'l, Inc.*, 737 F. App'x 543, 547 (2d Cir. 2018) (corporation's principal place of business was its "nerve center" headquarters and not merely the "office" it used "for purposes relating to [a] [c]onsent [d]ecree"); *see also* 13F Arthur R. Miller, *Federal Practice and Procedure* § 3625 n.26.90 (3d ed.) (collecting cases).[2] At core, a corporation's "nerve center," and thus its principal place of business for the purposes of diversity of citizenship, is where the lion's share of corporate decisionmaking and direction occurs at the time a lawsuit is initiated, not where corporate decisionmaking may have happened in the past or where it may happen in the future.  *See Protostorm, Inc. v. Foley & Lardner LLP*, 18-CV-2107 (PKC) (JO), 2019 WL 4094882, at *6 (E.D.N.Y. Aug. 29, 2019) (plaintiff's testimony established that principal place of business was an executive's "house in Connecticut . . . because [they were] not operating out of Delaware yet"); *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570 (2004) ("[T]he jurisdiction of the court depends upon the state of things at the time of the action brought." (citation omitted)).

In determining the situs of a corporation's nerve center, courts may consider proffered evidence and "sworn declaration[s]" so long as said evidence does not merely provide "self-serving . . . . legal conclusions."  *See, e.g.*, *Signature Fin. LLC v. Chicago Elite Cab Corp.*, 2:16-

---

[2] As of the date of this Opinion & Order, the Second Circuit has yet to issue a precedential opinion that provides further clarity on the *Hertz* nerve center test.

cv-6063 (DRH)(SIL), 2018 WL 1385896, at *5 (E.D.N.Y. Mar. 19, 2018); *Cofimco USA, Inc. v. Mosiewicz*, 15-cv-9118 (SAS), 2016 WL 1070854, at *4 (S.D.N.Y. Mar. 16, 2016) (declaration not credible where it "parrot[ed] the language of the *Hertz* decision . . . without providing any supporting details for the assertions that [declarant] 'directs, controls, and coordinates'" corporate affairs"); *Protostorm*, 2019 WL 4094882, at *6–7.

### B.   *Application*

Based on the record properly before me, the lion's share of Benchmark's corporate decisionmaking is clearly made in New York, which renders Benchmark a citizen of New York for the purposes of diversity of citizenship jurisdiction.[3]  Pavmed submitted evidence that Benchmark's highest-level executives, those identified as its "Management Team" on its website, all work out of New York.  (Yang Decl. Exs. 3–5, 20–22, 39 (collecting the LinkedIn profiles and FINRA filings from Benchmark's CEO, chief compliance officer, and VP of Acquisitions).)[4]  Moreover, Benchmark's COO and its Chief Legal Officer both work out of New York.  (Yang Decl. Exs. 2, 6–7, 2–24.)  By comparison, there is almost no evidence that at the time of the filing of this lawsuit, Benchmark's high-level corporate decisionmaking emanated from Georgia.  The basis for Benchmark's main argument—that its nerve center is Georgia—is made through the sworn declaration of its CEO; however, this declaration at most offers self-

---

[3] Because of my holding, I need not reach Pavmed's argument, raised for the first time in its reply briefing, that a corporate entity "separate" from Benchmark is the real party in interest to this breach of contract action.  (*See* Doc. 28, at 5.)  *See also Sonterra Cap. Master Fund, Ltd. v. Barclays Bank PLC*, 403 F. Supp. 3d 257, 262 (S.D.N.Y. 2019) (discussing the requirement that an action must be "prosecuted in the name of the real party in interest" under Federal Rule of Civil Procedure 17(a)(1)).  In any event, as a legal matter I need not address this argument since it was raised for the first time in Pavmed's reply.  *See Behrens v. JPMorgan Chase Bank N.A.*, 16-CV-5508 (VSB), 2021 WL 4134887, at *2 n.3 (S.D.N.Y. Sept. 9, 2021) (arguments raised for the first time in a "reply brief" are "waived" (citation omitted)).

[4] "Yang Decl." refers to the Declaration of Dielai Yang in Support of Defendant's Motion to Dismiss, (Doc. 16), and the exhibits attached thereto.

serving conclusions, not facts about where corporate decisionmaking actually occurred at the time Benchmark filed this lawsuit in December of 2020. (*See, e.g.*, Nessim Decl. ¶¶ 8 ("Prior to the COVID-19 pandemic, Benchmark's Georgia Headquarters have been the primary location for all staff meetings of Benchmark's heads of corporate enterprise"), 9 ("Decision-making authority on high level matters concerning Benchmark rests primarily in the Georgia Headquarters.").[5] Indeed, this declaration establishes that Benchmark's CEO has been "work[ing] remotely from New York State" since "the COVID-19 pandemic" started, with "approximately 10 days a month spent in Benchmark's New York branch office." (*Id.* ¶ 17.) Benchmark's argument about where its corporate decisionmaking may have occurred prior to when it commenced this action is irrelevant. *See Protostorm*, 2019 WL 4094882, at *6; *Grupo Dataflux*, 541 U.S. at 570; *see also Colmenares v. Paedae, Inc.*, Case No. CV 21-5221-DMG (KSx), 2021 WL 4934976, at *4 (C.D. Cal. Oct. 22, 2021) (recognizing that, although the "difficulty" of applying the nerve center test "is surely even more compounded in the post-COVID-19 era, when substantially more employees telecommute," under *Hertz*, "every corporation has a principal place of business, and has only one of them." (citing 559 U.S. at 93, 95–96)); *cf. Daimler AG v. Bauman*, 571 U.S. 117, 130 (2014) (recognizing that a corporation was subject to general personal jurisdiction in Ohio "because 'Ohio was the corporation's principal, if temporary, place of business.'" (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 n.11 (1984))).

   Similarly, Benchmark's references to the "address that has appeared on [its] governmental filings" is, without more, irrelevant. (MTD Opp. 13.) *Cf. Hertz*, 559 U.S. at 97 ("[W]e reject suggestions such as, for example, the one made by petitioner that the mere filing of

---

[5] "Nessim Decl." refers to the Declaration of Michael H. Nessim in Opposition to Motion to Dismiss. (Doc. 20.)

a form like the Securities and Exchange Commission's Form 10–K listing a corporation's 'principal executive offices' would, without more, be sufficient proof to establish a corporation's 'nerve center.'").

Benchmark's reliance on *Charles v. Slade Industries, Inc.*, 19-CV-3013 (NGG) (SMG), 2019 WL 6768659 (E.D.N.Y. Dec. 12, 2019), is unavailing.  There, Judge Garaufis found that various internet sources suggesting a corporation had its headquarters in New York did not establish New York as the corporation's nerve center, because the corporation's president submitted a declaration stating that "[a]ll of [the corporation's] decision making and corporate activities are conducted out of [its] headquarters in New Jersey."  *See id.* at *1–2 (internal quotation marks omitted).  Unlike in *Slade Industries*, Pavmed submitted evidence actually establishing where Benchmark's highest-level executives do their work, and Benchmark's materials filed in opposition do not contradict that evidence.

Accordingly, I find that Benchmark and Pavmed are citizens of New York under 28 U.S.C. § 1332, and I thus do not have subject matter jurisdiction to hear this case.

## IV.    Conclusion

For the foregoing reasons, the motion to dismiss is GRANTED.  The Clerk of Court is directed to terminate the open motions on the docket and to close this action.

SO ORDERED.

Dated: December 16, 2021
        New York, New York

_____
Vernon S. Broderick
United States District Judge